IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| RICHARD DEE THOMAS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GEORGE VAUGHN et al.,<br><br>　　　　Defendants. | Case No. 2:93-CV-925 PGC<br><br><br>MEMORANDUM DECISION<br>AND ORDER |

Plaintiff, Richard Dee Thomas, an inmate at the Utah State Prison, filed this pro se civil rights suit under 42 U.S.C. § 1983. Plaintiff's motion to proceed *in forma pauperis* and motion for appointed counsel were granted. This case is now before the Court for screening of Plaintiff's First Amended Complaint under 28 U.S.C. § 1915(e), and for consideration of Plaintiff's Motion for Partial Summary Judgment which has been fully briefed.

**ANALYSIS**

**I. Procedural Background**

Plaintiff filed this pro se civil rights action on October 18, 1993, while awaiting trial in the Utah Third District Court on the charge of aggravated robbery. The original complaint named as defendants four officers with the Salt Lake City Police Department: George Vaughn, Don Bell, Ray Dalling and Ron Hunt. The complaint identified three separate civil rights claims including: unreasonable search and seizure under the Fourth

Amendment, violation of the Fifth Amendment prohibition against compelled self-incrimination, and, use of excessive force during arrest.

On August 4, 1995, Plaintiff was convicted of aggravated robbery in state court.  In April 1997 the Court ordered official service of process upon the original defendants who promptly answered the original complaint.  The Court later appointed counsel to represent Plaintiff in November 1998.  Plaintiff's counsel, Karl R. Cannon, then filed a motion to stay this action pending the outcome of parallel state court proceedings.  A stay was granted on November 12, 1999, and the case was administratively closed on September 22, 2000.  By December 2002 Plaintiff had fully exhausted his direct appeals and habeas corpus review in the state courts, however, Plaintiff's counsel never filed a motion to lift the stay and proceed with this case.

On June 24, 2004, Plaintiff, acting pro se, filed an *ex parte* motion to reopen this case.  The matter was referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B).  After denying Mr. Cannon's motion to withdraw as Plaintiff's counsel, a status conference was held and a scheduling order was entered.  The Court also granted Plaintiff's motion to amend the complaint.

On August 25, 2005, Plaintiff filed his First Amended Complaint naming eight additional individual defendants and the municipality of Salt Lake City.  To date, Defendants have not

filed an answer to Plaintiff's First Amended Complaint.  Defense counsel asserts that the amended complaint was never properly served on any of the defendants, however, Mr. Cannon has filed copies of email correspondence between himself and defense counsel, Mr. Robinson, evidencing their agreement that service of the First Amended Complaint on the original four defendants and Salt Lake City was proper.  The correspondence also states that Mr. Robinson agreed to contact the additional individual defendants to determine whether he could accept service on their behalf, or whether they would prefer to be served personally.  It is not clear whether Mr. Robinson ever contacted those individuals or how they responded.  On February 21, 2006, Plaintiff filed the present Motion for Partial Summary Judgment which has now been fully briefed and is properly before the Court.

## II. Motion for Partial Summary Judgment

### A. Facts[1]

The civil rights violations alleged by Plaintiff stem from events surrounding his arrest on suspicion of aggravated robbery on the morning of July 1, 1993.  The previous evening, officers from the Salt Lake City Police Department (SLCPD) responded to a call of an armed robbery at the Kentucky Fried Chicken restaurant located at 132 North Redwood Road in Salt Lake City.  Officers spoke with the manager of the restaurant who provided a description of the suspect and stated that the suspect was armed at the time of the robbery.  While securing a parking lot near the restaurant where some coins had reportedly been dropped by the suspect, Officers Price and Louis were approached by an unidentified female who was curious about what was happening. The officers told the woman about the robbery and described the suspect to her as a tall, black, male, possibly carrying a bag. The woman stated that a person matching that description might be located in apartment #82 of a nearby apartment complex.  Officers

---

[1]     The facts presented here are drawn primarily from the memorandum supporting Plaintiff's Motion for Partial Summary Judgment and the attached exhibits.  Although Defendants initially objected to Plaintiff's statement of undisputed facts generally, challenging the authenticity of Plaintiff's supporting documentation, Plaintiff has since filed authenticated copies of those documents and Defendants have not raised any further objections to them.  Defendant's opposition memorandum only raised three specific objections to Plaintiff's statement of facts which are noted herein.

Lewis, Price, and Jones (Aff. Supp. Pl.'s Mot. Summ. J. Ex. 8)
then went to the apartment to verify the woman's statement.
Jones and Louis approached the door of the apartment where they
observed Plaintiff through the window.  The officers identified
themselves but Plaintiff refused to open the door and instead
came to the window and adjusted the shades.  Officers then spoke
to neighbors who confirmed that the man living in apartment #82
matched the description of the robbery suspect.  Officers again
yelled at Plaintiff to open the door but he did not respond.
Officer Jones reports that at this point she believed the
officers had probable cause to "kick the door."  (Aff. Supp.
Pl.'s Mot. Summ. J. Ex. 4)  Jones then developed a plan to
forcibly enter the apartment with Officers Louis and Williams,
while Officer Price secured the rear of the apartment.[2]  (Aff.
Supp. Pl.'s Mot. Summ. J. Ex. 4 & 10)  Louis states that he
forced the door open and accompanied Officers Jones and Williams
into the living room.[3]  (Aff. Supp. Pl.'s Mot. Summ. J. Ex. 8)
Officer Vaughn's report, however, states that officers Jones,

---

[2] Officer Louis' supplemental report states that "several
officers covered the rear." (Aff. Supp. Pl.'s Mot. Summ. J. Ex.
9)

[3] Officer Louis' supplemental report states that he merely
shined his flashlight into the living room after kicking in the
door.  It does not mention officers actually entering the living
room.  (Aff. Supp. Pl.'s Mot. Summ. J. Ex. 9 at 2.)

William, Louis and Larsen were responsible for making entry.[4]
(Aff. Supp. Pl.'s Mot. Summ. J. Ex. 2)  Upon Defendants entry,
Plaintiff allegedly yelled from a back room that he had a hostage
whom he would harm if officers did not back off.  The officers
then exited the apartment and waited for backup.[5]

Shortly thereafter, Sergeant Vaughn and Lieutenant Schroen
arrived on the scene and began negotiating with Plaintiff.  At
approximately 2:30 a.m. on July 1, 1993, Officer Dalling states
that he received a phone call from Sergeant Jackson at the scene
of the standoff.  (Aff. Supp. Pl.'s Mot. Summ. J. Ex. 2)  Jackson
asked Dalling to report to the crime scene where he met with
Lieutenant Atkinson.  Atkinson gave Dalling the details
concerning the robbery and instructed Dalling to go prepare a
search warrant for Plaintiff's apartment.

---

[4] Vaughn states that the officers made entry "in pursuit of
an armed suspect," however, there is no evidence that Vaughn was
present at the time of the entry, and none of the officers
actually present reported seeing Plaintiff armed in the
apartment.

[5] According to the Affidavit for Search Warrant provided by
Plaintiff, Officer Hunt was also present when officers knocked on
Plaintiff's door and later assisted in forcing entry into the
apartment.  Defendants challenge this claim, pointing out that
the Affidavit for Search Warrant was prepared by Officers Dalling
and Jackson who were not present at the time these events
occurred.  In addition, this statement appears to contradict the
statements of other officers who were actually present.  And, the
only copy of the Affidavit for Search Warrant that has been found
is unsigned and unexecuted.  Thus, because a genuine issue of
fact remains as to whether Hunt actually participated in the
initial search, summary judgment against Hunt on this claim would
clearly be inappropriate at this time.

Once Dalling completed the draft warrant application he gave it to Paul Parker for approval before presenting it to Commissioner Palacios for her signature.  Dalling states that Sergeant Jackson "assisted [Dalling] in writing the warrant and getting the judge's signature" and the two then returned to the apartment with the warrant.[6]  (Aff. Supp. Pl.'s Mot. Summ. J. Ex. 2)  Approximately forty-five minutes to an hour after they returned, Plaintiff surrendered and S.W.A.T. officers entered the apartment to search for hostages.  Dalling states that he and Jackson then "served the search warrant on the apartment."

## B. Summary Judgment Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ."  Cellotex v. Catrett, 477 U.S. 317, 324, 106 S.

---

[6] Defendants opposition memorandum asserts there is no support for Plaintiff's statements that "Dalling and H. Jackson went to obtain a search warrant;" "Dalling and Jackson met with Commissioner Frances M. Palacios;" and, "Dalling served the search warrant, entered Thomas's apartment or searched it . . . ."  However, these statements are clearly supported by the Supplemental Field Notes prepared by Dalling himself.  (Aff. Supp. Pl.'s Mot. Summ. J. Ex. 2)

Ct. 2548, 2553 (1986). Thus, Rule 56(a) of the Federal Rules of
Civil Procedure allows a party to move "with or without
supporting affidavits for a summary judgment in the party's favor
upon *all or any part* [a claim]." Fed. R. Civ. P. 56(a) (emphasis
added).

A party seeking summary judgment always bears the initial
responsibility of informing the district court of the basis for
its motion, and identifying those portions of "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any," which it believes
demonstrate the absence of a genuine issue of material fact.
Fed. R. Civ. P. 56. A movant who would bear the burden of proof
at trial must submit evidence to establish every essential
element of its claim or affirmative defense. *See In re Ribozyme
Pharmaceuticals, Inc. Securities Litigation*, 209 F. Supp.2d 1106,
1111 (D. Colo. 2002). A party who does not have the burden of
proof at trial must show the absence of a genuine fact issue.
*Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513,
1517 (10th Cir. 1994). In either case, once the motion has been
properly supported, the burden shifts to the nonmovant to show,
by tendering depositions, affidavits, and other competent
evidence, that summary judgment is not proper. *Concrete Works,
36 F.3d at 1518*. All the evidence must be viewed in the light
most favorable to the party opposing the motion. *Simms v.*

*Oklahoma ex rel Dep't of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815, 120 S. Ct. 53 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 528 U.S. 933, 120 S. Ct. 334 (1999).

### III. Fourth Amendment Analysis

### A. Search Pursuant to Invalid Warrant

Plaintiff asserts that the search of his apartment following his surrender to police was unreasonable under the Fourth Amendment because it was not conducted with a valid warrant. Plaintiff argues that the warrant issued by Commissioner Palacios was invalid because it was issued by a Court Commissioner rather than a judge.

### i. Validity of the Warrant

Plaintiff previously challenged the validity of the Palacios warrant in his state court appeals, in his state habeas proceedings, and also in a separate civil rights suit in this court.  On direct appeal of Plaintiff's conviction the Utah Supreme Court concluded that Utah law prohibits court commissioners from issuing search warrants, however, it found that warrants issued by court commissioners prior to that ruling were nevertheless valid under the doctrine of de facto authority.

*State v. Thomas*, 961 P.2d 299, 303-4, (Utah 1998).  Despite the prospective nature of its holding, however, the Utah Supreme Court found that the de facto doctrine should not apply to Plaintiff's case because to do so would deny Plaintiff the "fruits of [his] victory."  *Id.* at 302.  The Utah Supreme Court thus remanded the case to the Utah Court of Appeals to determine "whether the trial court's failure to suppress evidence obtained from the search [pursuant to the Palacios warrant] constituted reversible error."  *Id.* at 305.  On remand, the Utah Court of Appeals observed that "the invalid search amount[ed] to a violation of a federally protected constitutional right," but ultimately concluded that the failure to suppress evidence obtained from the search was harmless error.  *State v. Thomas*, 1999 WL 33244831, No. 961170-CA, at *1 (Utah Ct. App. Feb. 25, 1999).

Plaintiff argues that this Court should adopt the Utah Court of Appeals' statement that the search pursuant to the Palacios warrant violated Plaintiff's federal constitutional rights.  However, it appears from the Utah Court of Appeals opinion that this statement was intended as merely a working assumption for addressing the issue actually before that court, not as a conclusion of law with preclusive effect.  The question whether the Palacios warrant violated the Fourth Amendment to the United States Constitution was not properly before the Utah Court of

10

Appeals on remand.  Thus, the Court finds that the Utah Court of Appeals statement regarding the constitutionality of the Palacious warrant under federal law is merely dictum, and is not controlling here.

### ii. Collateral Estoppel

Although the Utah Supreme Court found that the warrant issued by Palacios was invalid under the Utah Constitution, the question whether the warrant violated federal law has been previously addressed by this Court.  In 1995 Plaintiff filed a separate civil rights suit against Commissioner Palacios alleging that she violated his civil rights by issuing the search warrant for his apartment without proper authority.  *Thomas v. Palacios*, No. 2:95-CV-128-DS (D. Utah Nov. 9, 1998).  The Court ultimately dismissed that case, concluding that the issuance of warrants by court commissioners does not amount to a Fourth Amendment violation; and, although her actions were later found to violate Utah law, Palacios nevertheless acted with de facto authority entitling her to absolute judicial immunity.  (Doc. No. 22 Report and Recommendation; Doc No. 24 Order Adopting R&R.)  On appeal, the Tenth Circuit affirmed the decision solely on judicial immunity grounds.  *Thomas v. Palacios, 194 F.3d 1321*, No. 98-4196, 1999 WL 710340 (10th Cir. Sept. 13, 1999).

Under the doctrine of collateral estoppel, also known as issue preclusion, "once a court has decided an issue of fact or

law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414 (1980). In addition, a litigant who was not a party to the earlier case may use collateral estoppel "offensively" in a new federal suit, so long as the party against whom the earlier decision is asserted had a "full and fair opportunity" to litigate the issue in the earlier case. *Id.* at 95.

Plaintiff clearly had a "full and fair opportunity" to litigate the constitutionality of the warrant issued for his apartment in his civil rights suit against Palacios. Because this court has already decided this issue against Plaintiff, he is barred by collateral estoppel from relitigating it here. Thus, the Court concludes that Plaintiff's allegations of unreasonable seizure under the Fourth Amendment based on the legality of the Palacios warrant must be dismissed based on collateral estoppel.

### B. Initial Warrantless Entry

Plaintiff also alleges that the initial warrantless entry into his apartment amounted to an unreasonable search in violation of the Fourth Amendment. "It is a basic principle of Fourth Amendment law that searches and seizures inside the home without a warrant are presumptively unreasonable unless the

police can show both probable cause and the presence of exigent circumstances." *Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157, 1172 (10th Cir. 2003). "[E]xceptions to the warrant requirement must be specifically established, well delineated, and jealously and carefully drawn." *United States v. Aquino*, 836 F.2d 1268, 1270 (10th Cir. 1988). Exigent circumstances may justify warrantless searches when:  (1) there is probable cause for the search or seizure, and the evidence is in imminent danger of destruction, *Cupp v. Murphy*, 412 U.S. 291, 294-96, 93 S. Ct. 2000 (1973);  (2) the safety of law enforcement or the general public is threatened, *Warden v. Hayden*, 387 U.S. 294, 298-99, 87 S. Ct. 1642 (1967);  (3) the police are in "hot pursuit" of a suspect, *United States v. Santana*, 427 U.S. 38, 42-43, 96 S. Ct. 2406 (1976);  or (4) the suspect is likely to flee before the officer can obtain a warrant, *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S. Ct. 1684 (1990).  The existence of exigent circumstances is a mixed question of law and fact. *See United States v. Stewart*, 867 F.2d 581, 584 (10th Cir. 1989).

It is undisputed that Defendants' forced opening of the door to Plaintiff's apartment, regardless of whether they physically entered the apartment as stated in multiple police reports, or merely forced the door open and shined a flashlight into the living room as Officer Louis' revised statement suggests, amounted to a search for Fourth Amendment purposes.  Thus, the

burden is on the government to prove that the officers had
probable cause and that exigent circumstances existed that made a
warrantless entry necessary.  *U.S. v. Chavez*, 812 F.2d 1295, 1298
(10th Cir. 1987).  In determining whether the government has met
its burden, the Court must "evaluate the circumstances as they
would have appeared to prudent, cautious and trained officers."
*United States v. Cuaron*, 700 F.2d 582, 586 (10th Cir. 1983).

It is undisputed that Defendants had probable cause to
believe that the suspected robber of the nearby KFC restaurant
was present inside Plaintiff's apartment.  This belief was based
not only on the information provided by the anonymous informant,
but also on the fact that officers were able to observe a person
matching the description provided by the restaurant manager
through the window of the apartment.  In addition, Defendants
also had confirmation from Plaintiff's neighbors that an occupant
of the apartment indeed matched the description of the suspect.
Thus, the primary issue here is whether exigent circumstances
existed to justify entering the apartment without first obtaining
a warrant.  Defendants assert that exigent circumstances existed
for two reasons: first, because Plaintiff posed a threat to the
safety of officers and the public; and, second, because of the
risk that Plaintiff might escape or destroy evidence.  (Def.'s
Mem. Opp. Summ. J. at 7.)

### i. Public/Officer Safety

Defendants assert that warrantless entry into Plaintiffs apartment was justified because Plaintiff was suspected of recently committing an armed robbery and therefore "*could have* posed a threat not only to [the officers], but to the safety of the public." *Id.* (emphasis added)  Concern for the safety of police officers and the general public may amount to exigent circumstances justifying warrantless search of a dwelling only in very limited instances.  The Tenth Circuit has articulated the following general framework for analyzing this type of exigent circumstances claim:

> The basic aspects of the "exigent circumstances" exception are that (1) the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched.

*United States v. Smith,* 797 F.2d 836, 840 (10th Cir. 1986).

These three requirements are conjunctive, meaning that the government has the burden of demonstrating each of them in order to overcome the Fourth Amendment's general presumption that warrantless searches are unreasonable.  *See U.S. v. Zogmaister,* 90 Fed. Appx. 325, 330 (10th Cir. 2004).  The Tenth Circuit has also required that a government assertion of exigent circumstances be "supported by clearly defined indicators of

exigency that are *not subject to police manipulation or abuse.*"
*Aquino*, 836 F.2d at 1272 (emphasis added).

Under the first requirement the government must demonstrate
that the officers had reasonable grounds to believe that there
was an immediate need to protect their own lives or the lives of
others.  The record before the Court does not conclusively show
this to be the case here.  Although the officers might have
reasonably assumed that Plaintiff was still armed, based on the
fact that a weapon was used in the robbery, this alone does not
justify their immediate entry into Plaintiff's apartment.  In
fact, absent other circumstances showing an immediate threat to
the officers or others, the possibility that Plaintiff was armed
should have led Defendants to proceed more cautiously.

Regarding the second requirement, the record in this case
shows that the officers decision to enter Plaintiff's apartment
may have been motivated by their desire to arrest Plaintiff and
seize evidence relevant to the robbery they were investigating.
Undoubtedly, the reason the officers arrived at the apartment in
the first place was based on their investigation into the
location of possible suspects in the armed robbery nearby.

Finally, turning to the third requirement, officers cannot
rely upon exigent circumstances to justify a warrantless search
where the exigency was created by the officer's own actions.  *See*
United States v. Mikulski, 317 F.3d 1228, 1233 (10th Cir. 2003).

This requirement stems from a concern that "well-meaning police officers may exploit such opportunities without sufficient regard for the privacy interests of the individuals involved." *United States v. Aquino*, 836 F.2d 1268, 1272 (10th Cir. 1988). While Defendants in this case undoubtedly faced some danger standing just outside Plaintiff's apartment, given the possibility that he might be armed, this risk could presumably have been alleviated simply by surrounding the apartment at a safer distance and awaiting backup. In fact, this seems to be a much more sensible approach to ensuring their safety than kicking in the door and conducting a warrantless search.

The only precedent cited by Defendants to support the warrantless entry here is the case of *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 87 S. Ct. 1642 (1976). In that case the Supreme Court upheld the admissibility of evidence seized during the warrantless search of a home into which an armed robber had reportedly fled less than five minutes before the officers arrived. There, officers knocked and announced their presence and were greeted by an occupant who, after being told that an armed robber was believed to have entered her house, offered no objection when the officers asked to search. The officers quickly located the suspect within the home and placed him under arrest while other officers continued to search and seize evidence in other parts of the home. Finding that the evidence

was not seized in violation of the Fourth Amendment the Supreme
Court stated that "[t]he Fourth Amendment does not require police
officers to delay in the course of an investigation if to do so
would gravely endanger their lives or the lives of others." *Id.
at 298-9*.

Despite this seemingly broad pronouncement, however, the
facts presented in *Hayden* clearly limit its applicability to a
very narrow set of circumstances.  In that case, officers were
actually in "hot pursuit" of the suspect, arriving on the scene
less than five minutes after witnesses who followed the suspect
from the scene of the robbery watched him enter the home.  In
addition, the officers knocked and actually received permission
to search the home before entering.  And, there were others
inside the dwelling who may have been in immediate danger.  Thus,
*Hayden* is easily distinguishable because none of those
circumstances existed in this case.

In the present case the officers did not even arrive at
Plaintiff's apartment until approximately forty-five minutes
after the robbery, by which time it was unclear whether the
suspect was still armed or whether he had already disposed of the
weapon used in the robbery.  Also, unlike in the *Hayden* case,
nobody actually followed Plaintiff from the scene of the robbery
and observed him enter his apartment.  Instead, Defendants were
merely following a lead provided by an unidentified informant to

determine Plaintiff's probable location.  Finally, officers had
no reason to believe that anyone else was in Plaintiff's
apartment who might be in danger until after they entered without
a warrant and Plaintiff falsely stated that he had a hostage.

Thus, the Court finds that the record before it does not
support the conclusion that the warrantless search here was
necessitated by the need to protect officers or the public.

### ii. Escape/Destruction of Evidence

As an alternative justification for the warrantless entry
here Defendants assert that exigent circumstances existed due to
the possibility that delay might allow Plaintiff to either
destroy evidence or escape.  The Tenth Circuit has identified
four factors relevant to determining whether a warrantless search
is reasonable based on police fears that a suspect may destroy
evidence, these are: (1) whether there was clear evidence of
probable cause, (2) the seriousness of the crime committed and
the likelihood that evidence might be destroyed, (3) whether the
search is limited in scope to the minimum intrusion necessary to
prevent the destruction of evidence, and (4) whether the search
is supported by clearly defined indicators of exigency that are
not subject to police manipulation or abuse.  See *Aquino*, 836
*F.2d at 1272*.  Regarding the second factor, the mere possibility
that evidence could be destroyed is insufficient to create
exigent circumstances, instead, officers must have "'a reasonable

belief that the loss or destruction of evidence is imminent.'" *U.S. v. Anderson*, 981 F.2d 1560, 1568 (10th Cir. 1992) (quoting *U.S. v Radka*, 904 F.2d 357, 362 (6th Cir. 1990).

Once again, the Court notes that Defendants had probable cause to believe that the perpetrator of an armed robbery, obviously a serious crime, was present in Plaintiff's apartment. However, Defendants have not pointed to any evidence showing that the destruction of evidence by Plaintiff was reasonably likely or imminent in this instance. Defendants not only fail to state what evidence they reasonably believed was in imminent danger of destruction, they also have not alleged any facts to support the assumption that the evidence was located inside the apartment. Unlike most of the cases cited by Defendants, this case does not involve drug evidence which is easily destroyed. Presumably the evidence Defendants sought to preserve included the weapon used in the robbery and the money taken. Although it is conceivable that Plaintiff might have tried to destroy this evidence while officers obtained a warrant, based on the facts alleged, the possibility seems remote given the nature of the evidence and the proximity of the officers.

Similarly, Defendants have not met their burden of showing a likelihood that Plaintiff might escape during the time required to obtain a warrant. The record clearly shows that Plaintiff was holed up inside his apartment and that there were numerous

officers surrounding the premises.  It is unclear how Plaintiff
might have easily escaped under these circumstances.

Thus, the Court cannot conclude from the record in this case
that the possibility of Plaintiff escaping or destroying evidence
necessarily created exigent circumstances justifying the
warrantless entry into his apartment.

### C. Qualified Immunity

Having concluded that the record in this is insufficient to
show that the warrantless entry into Plaintiff's apartment was
justified by exigent circumstances, the Court must now address
Defendants' assertion of qualified immunity.  The doctrine of
qualified immunity shields government officials from individual
liability for civil damages "insofar as their conduct does not
violate clearly established statutory or constitutional rights of
which a reasonable person would have known." *Harlow v.
Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).
Qualified immunity is "an immunity from suit rather than a mere
defense to liability; and like an absolute immunity, it is
effectively lost if a case is erroneously permitted to go trial."
*Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)(*quoting Mitchell v.
Forsyth*, 472 U.S. 511, 526 (1985)).  Thus, immunity questions
should be addressed at the earliest possible stage in litigation.
*Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)(per
curiam)).

Because of the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must meet a "heavy two-part burden." *Id.* Plaintiff must first establish that the facts, taken in the light most favorable to Plaintiff, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If Plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id.* This determination must be made "in the light of the specific context of the case, not as a broad general proposition." *Id.* And, "the relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. If the plaintiff fails to satisfy either part of this "heavy two-part burden," the Court must grant the defendant qualified immunity and dismiss the deficient claims.

In *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034 (1987), the Supreme Court specifically addressed the applicability of qualified immunity to Fourth Amendment cases. Commenting on its *Anderson* holding in a subsequent case, the

Court stated:

> Officers can have reasonable, but mistaken, beliefs as
> to the facts establishing the existence of probable
> cause or exigent circumstances . . . . Yet, even if a
> court were to hold that the officer violated the Fourth
> Amendment by conducting an unreasonable, warrantless
> search, *Anderson* still operates to grant officers
> immunity for reasonable mistakes as to the legality of
> their actions.

*Saucier*, 533 U.S. at 206.  Thus, "*in addition to* the deference

officers receive on the underlying constitutional claim,

qualified immunity can apply in the event the mistaken belief was

reasonable."  *Id.* (emphasis added).

It is undisputed that, as Plaintiff asserts, the Fourth

Amendment prohibition against unreasonable searches and seizures

was well established at the time of this incident.  However, the

Court finds that exact contours of the exigent circumstances

exceptions relied on by Defendants were sufficiently uncertain

that even legal scholars could disagree as to whether they

applied here.  Defendants clearly faced a rapidly evolving

situation and the possibility of a dangerous confrontation with

an armed robbery suspect.  The Tenth Circuit has explained that

under such ambiguous circumstances officers are entitled to

qualified immunity so long as their mistake was reasonable.  "A

mistake of law may be 'reasonable' where the circumstances

'disclose substantial grounds for the officer to have concluded

he had a legitimate justification under the law for acting as he

did.'"  *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179,

23

1196 (10th Cir. 2001) (quoting *Saucier*, 533 U.S. at 208).   Thus, although the Court finds that the record does not clearly show that exigent circumstances were present in this instance, the evidence does "disclose substantial grounds" supporting the conclusion that Defendants' mistaken belief that exigent circumstances existed was reasonable.   Accordingly, the Court finds that Defendants are entitled to qualified immunity against Plaintiff's claim that the initial entry to his apartment violated the Fourth Amendment.

### IV. Screening

### A. Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B), a court shall dismiss any claims in a complaint filed *in forma pauperis* if they are frivolous, malicious or fail to state a claim upon which relief may be granted.   *Id.*   "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."   *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999).   When reviewing the sufficiency of a complaint the Court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."   *Hall v. Bellmon*, 935

F.2d 1106, 1109 (10th Cir. 1991).

### B. Excessive Force During Arrest

Plaintiff's First Amended Complaint alleges that officers used excessive force during his apprehension and subsequent interrogation.  Specifically, Plaintiff alleges that unidentified officers "jumped on and smashed Plaintiff's finger while he was handcuffed," and that Hunt, Dalling, and others "unlawfully assaulted and battered Plaintiff by, among other things, punching him and threatening to kill him" with the intent to force Plaintiff to sign a false confession.

In *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1869-71 (1989), the Supreme Court held that § 1983 claims based on excessive force during arrest are governed by the Fourth Amendment's "objective reasonableness" standard, and not the substantive Due Process standard.  *Id.*  The Fourth Amendment standard requires police conduct to be objectively reasonable in light of the facts and circumstances surrounding the defendants actions, irrespective of their underlying intent or motivation. *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992). Reasonableness must be viewed from the vantage point of the defendants on the scene, thus, "[t]he court cannot, in the serenity of its chambers, apply 20/20 hindsight in determining the reasonableness of the defendants' actions."  *Id.*  Finally, while minor injuries do not preclude an action for unreasonable

force, *de minimis* uses of physical force ordinarily do not rise to the level of a constitutional violation.  *See Jarrett v. Schubert*, No. Civ. A. 97-2628-GTV, 1998 WL 471992 at *4 (D.Kan. Jul. 31, 1998) (citing *Hudson v. McMillian, 503 U.S. 1, 9-10 (1992)*).

The allegations in Plaintiff's First Amended Complaint are insufficient to support a claim of excessive force under the Fourth Amendment.  Plaintiff's only allegations of improper physical force state that his finger was smashed during his arrest, and that he was punched in the body during a subsequent interrogation.  Plaintiff's allegations attempt to portray Defendants' actions as unreasonable based primarily on conclusory allegations about Defendants possible intentions or motivations. However, to state a claim Plaintiff must allege sufficient facts to show that the actions were unreasonable "irrespective of their underlying intent or motivation." *Frohmader, 958 F.2d at 1026*. More importantly, however, the level of force allegedly used in this case appears to be *de minimis*.  Plaintiff does not allege that he suffered any injury whatsoever from the alleged attacks, nor do the circumstances show the minimal force alleged to be reprehensible. *See Pride v. Kansas Highway Patrol, 793 F.Supp. 279, 282 (D. Kan 1992)*.  Thus, the Court concludes that Plaintiff's allegations of excessive force are insufficient to state a claim on which relief can be granted.

**C. Entity Defendants**

In addition to the individual defendants, Plaintiff's First Amended Complaint also seeks relief from Salt Lake City based on the theory that it failed to properly train and supervise its agents.  Municipal entities cannot be held liable under § 1983 based on the doctrine of respondeat superior.  *See Cannon v. City and County of Denver*, 998 F.2d 867, 877 (10th Cir. 1993); *see also Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2051 (1978).  To establish municipal liability, "a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993-94 (10th Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1205 (1989)).  In the absence of an explicit policy or an entrenched custom, "the inadequacy of police training may serve as a basis of § 1983 liability . . . where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact." *Id.*

Plaintiff's First Amended Complaint does not allege specific facts linking Salt Lake City to a violation of Plaintiff's civil rights.  Plaintiff has not pointed to any official policy or custom implemented by Salt Lake City which led to a constitutional violation.  Nor has Plaintiff alleged facts

showing that the City failed to properly train its officers, much less that such a failure to train rose to the level of deliberate indifference.  Thus, Plaintiff's allegations against Salt Lake City must be dismissed for failure to state a claim on which relief can be granted.

## CONCLUSION

Based on the foregoing analysis the Court concludes that Plaintiff's claims stemming from the allegedly invalid search warrant are barred by collateral estoppel.  In addition, Defendants are entitled to qualified immunity against Plaintiff's claims arising from the initial warrantless entry into his apartment.  And, Plaintiff's remaining allegations must be dismissed for failure to state a claim on which relief can be granted.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **denied**, and, Plaintiff's First Amended Complaint is **dismissed.**

DATED this 11th day of August, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge